# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

The Trustees of the Sheet Metal Local
#10 Control Board Trust Fund,

     Plaintiffs,

                                  Civ. No. 08-4752 (RHK/JJK)
                                  **MEMORANDUM OPINION
                                  AND ORDER**

v.

Genz-Ryan Plumbing and Heating Co.,

     Defendant.

---

Carl S. Wosmek, Amy L. Court, McGrann Shea Carnival Straughn & Lamb, Chartered, Minneapolis, Minnesota, for Plaintiffs.

Jeremy D. Sosna, Jody A. Ward-Rannow, Ford & Harrison LLP, Minneapolis, Minnesota, for Defendant.

---

## INTRODUCTION

Plaintiffs, the Trustees of the Sheet Metal Local #10 Control Board Trust Fund (the "Trustees"), assert that Defendant Genz-Ryan Plumbing and Heating Co. ("Genz-Ryan") violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145, by failing to make fringe-benefit contributions required under its collective bargaining agreement. Currently pending before the Court are the Trustees' Motion for Partial Summary Judgment and Genz-Ryan's Motion for Summary Judgment. For the reasons set forth below, the Court will grant the Trustees' Motion and deny Genz-Ryan's

Motion.[1]

# BACKGROUND

The following facts are undisputed. Genz-Ryan is a plumbing and heating

contractor located in Burnsville, Minnesota. The Trustees manage the Sheet Metal Local

#10 Control Board Trust Fund (the "Fund"), which is a multi-employer fringe benefit

plan created pursuant to ERISA, 29 U.S.C. § 1002(37)(A). The Fund "is a clearinghouse

for a number of multiemployer fringe benefit plans established to provide pension, health

and welfare, educational and other benefits for employees pursuant to the terms of written

labor agreements." (Compl. ¶ 1.)

Genz-Ryan is a former member of the Sheet Metal and Roofing Contractors

Association ("SMARCA"), which is a multi-employer bargaining association. In 2005,

SMARCA and the Sheet Metal Workers International Association, Local 10 (the

"Union") entered into a collective bargaining agreement (the "2005 CBA"). (Martin

Strub Dep. Tr. Ex. 1.) At the time of its execution, Genz-Ryan had voluntarily designated

the Union as the bargaining representative of its employees, and through its SMARCA

representation, Genz-Ryan agreed to the terms of the 2005 CBA. The 2005 CBA

---

[1] Genz-Ryan requests that this Court stay its proceedings if summary judgment in its favor is not granted. (Def. Mem. in Supp. at 33.) Genz-Ryan asserts that the issues before this Court are currently pending before the NLRB. However, the Eighth Circuit has held upon nearly identical facts that final adjudications procured by a Union do not have a preclusive effect on trustees' ability to obtain relief for delinquent contribution payments under ERISA because unions and trustees are not in privity as a matter of law. Am. Fed'n of Television & Radio Artists Health & Ret. Funds v. WCCO Television, Inc., 934 F.2d 987, 989-91 (8th Cir. 1991). Accordingly, a stay is not appropriate.

required Genz-Ryan to make monthly contributions to various fringe-benefit funds.

The 2005 CBA contains what is commonly referred to as an "evergreen clause," which governs the extension of CBA terms beyond its termination date. This clause provides:

> This Agreement shall become effective on the 1st day of May, 2005, and shall remain in full force and effect until the 30th day of April, 2008, and shall continue in force from year to year thereafter, unless written notice of reopening is given not less than ninety (90) days prior to the expiration date. In the event such notice of reopening is served, this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party.

The 2005 CBA does not describe what constitutes a termination of conferences.

Prior to the 2005 CBA's expiration date, Genz-Ryan decided to withdraw from SMARCA and negotiate its own, separate agreement with the Union. On December 17, 2007, Jon Ryan[2] sent a letter to the President of SMARCA giving formal notice of Genz-Ryan's withdrawal. The Union was also given formal notice of Genz-Ryan's SMARCA withdrawal and its intention to negotiate a separate agreement.

On January 2, 2008, the Union sent Genz-Ryan a letter requesting the reopening of negotiations on the 2005 CBA. On January 21, 2008, Jon Ryan sent a response letter reminding the Union that it had withdrawn from SMARCA and would be negotiating its own separate contract with the Union. Genz-Ryan designated John Bowen as its bargaining representative, and on January 25, 2008, Bowen sent a letter to the Union stating:

> [T]his letter constitutes notice of the Company's desire to open negotiations directly with [the Union] to modify, amend, and/or change the wages, hours, and conditions of employment contained in the existing [CBA], and to negotiate a separate collective bargaining agreement with [the Union] covering the sheet metal workers employed by Genz-Ryan.

On March 17, 2008, Genz-Ryan and the Union met for their first bargaining session. Soon thereafter, Jon Ryan sent Genz-Ryan's first contract proposal to the Union. This proposal was very different from the 2005 CBA, providing for a new economic package.

A second bargaining session took place on March 31, 2008, where Genz-Ryan explained its contract proposal. A presentation was thereafter made to Genz-Ryan employees, who unanimously rejected the proposal. A third bargaining session was held on April 10, 2008. During this session, the Union argued that Genz-Ryan's proposal was too new and unfamiliar to work with. The Union offered to use the 2005 CBA as a template, but Genz-Ryan refused.

A fourth bargaining session took place on April 18, 2008. The Union maintained that Genz-Ryan's proposal was unworkable. On April 25, 2008, a fifth bargaining session was held at which the Union presented its proposal. Genz-Ryan was disappointed with its terms and rejected it. (Id. Ex. 12.)

On May 2, 2008, a sixth bargaining session took place. At this time, Genz-Ryan was informed that SMARCA had extended the 2005 CBA for a one-year term. The Union suggested that Genz-Ryan also renew the 2005 CBA, but Genz-Ryan refused. On May 5, 2008, Jon Ryan sent a letter to the Union expressing his frustration with the

---

[2] Jon Ryan is the President of Genz-Ryan.

negotiation process, stating that Genz-Ryan would follow the terms of the 2005 CBA through May 15, 2008, and thereafter implement terms consistent with its bargaining proposals. On May 9, 2008, a seventh bargaining session took place where the Union presented a new proposal. Genz-Ryan expressed frustration with this proposal and rejected it.

On May 14, 2008, the Union filed an unfair labor practices charge against Genz-Ryan, and on May 15, the Union notified Genz-Ryan of an impending two-day strike. The strike took place on May 16 and 19, 2008. Nevertheless, on May 16, 2008, an eighth bargaining session took place. This session was unsuccessful. At this time, Genz-Ryan ceased making pension-fund contributions.

While the Union and Genz-Ryan were engaging in negotiations, the Union filed a representation petition for an election among the Union workers at Genz-Ryan. The election was scheduled for May 20, 2008. The Union won the election and accordingly, the National Labor Relations Board ("NLRB") certified it as the exclusive bargaining representative for Genz-Ryan employees.

On June 11, 2008, Genz-Ryan sent a revised proposal to the Union, asserting that it was its final offer regarding wages and benefits. Soon thereafter, on June 17, 2008, the parties met for their ninth bargaining session and Genz-Ryan then made some minor amendments to its proposal to address Union concerns. On June 20, 2008, Bowen sent a letter to the Fund administrator stating that effective April 30, 2008, Genz-Ryan was no longer bound by the 2005 CBA.

On June 24, 2008, the Genz-Ryan employees rejected the latest contract proposal and authorized a strike that remains ongoing.  On June 25, 2008, Genz-Ryan declared negotiation impasse and informed the Union that it would implement the terms of its last contract proposal.  Nevertheless, on June 26, 2008, Jon and Bob Ryan sent an e-mail to the Union stating that despite the impasse, Genz-Ryan was willing to resume bargaining in good faith.  (Supp. Strub Aff. Ex. F.)  Two more bargaining sessions took place thereafter on August 15 and October 27, 2008.  No agreement was reached.

The NLRB held a hearing on the Union's unfair labor practices charge on November 18, 2008.  The Administrate Law Judge ("ALJ") issued an Order holding that the 2005 CBA terminated on April 30, 2008.  The union filed exceptions to this Order, which have yet to be ruled upon.

The Trustees filed the present action on July 23, 2008, claiming that Genz-Ryan has violated § 515 of ERISA through its failure to make fringe-benefit contributions after April 30, 2008.  The Trustees request payment of the delinquent contributions, interest, liquidated damages, and attorneys' fees and costs.

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that the material facts in the case are undisputed.  Celotex, 477 U.S. at 322; Mems v. City of St.

6

Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

The Trustees bring this lawsuit for delinquent fringe-benefit contributions under § 515 of ERISA. This Section provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. In their Motion for Partial Summary Judgment, the Trustees argue that Genz-Ryan is liable for fringe-benefit contributions accruing after April 30, 2008, as a matter of law. Genz-Ryan opposes the Trustees' Motion for Partial Summary Judgment, and makes its own Motion, raising three arguments: first, that this Court does not have subject-matter jurisdiction to entertain this lawsuit; second, that the evergreen clause in the 2005 CBA, requiring fringe-benefit contributions to be made after its expiration date, is not enforceable; and third, that it satisfied the terms of the evergreen clause by

"terminating conferences" with the Union.  Each argument will be addressed below.

**I.      The Court has subject-matter jurisdiction**

Federal district courts have subject-matter jurisdiction over claims for delinquent fringe-benefit contributions pursuant to § 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1). Nevertheless, Genz-Ryan argues that the Supreme Court's decision in Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co., 484 U.S. 539 (1988), precludes jurisdiction in this case because the Trustees seek fringe-benefit contributions accruing after the 2005 CBA expired.  (Def. Mem. in Supp. 19-24.)  Genz-Ryan misconstrues Laborers Health.

Under the National Labor Relations Act ("NLRA"), a company bound by a collective bargaining agreement may have a duty to make fringe-benefit contributions after the agreement's expiration while a new agreement is being negotiated.  Id. at 541. Therefore, a company may have a duty to make fringe-benefit contributions by contract or pursuant to a separate duty created by the NLRA.  In Laborers Health, the Supreme Court held that ERISA only provides the trustees of multiemployer benefit plans with a remedy to collect delinquent contributions required by contract, and not contributions required by operation of the NLRA.  Id. at 547-49.

Here, the Trustees are not seeking delinquent fringe-benefit contributions required by the NLRA, but instead are seeking contributions they claim are due under the terms of the 2005 CBA by operation of the evergreen clause.  Accordingly, the Court has subject-

matter jurisdiction here.[3]  See Greater Kansas City Laborers Pension Fund v. Superior

Gen. Contractors, Inc., 104 F.3d 1050, 1058 (8th Cir. 1997) (holding that the district court

had jurisdiction to address an ERISA claim for delinquent benefit contributions when the

trustees did not argue that the failure to make contributions was an unfair labor practice

under the NLRA).

## II.     The "evergreen clause" is enforceable against Genz-Ryan

Genz-Ryan next asserts that because it is an "8(f) contractor," it can not be bound

by the evergreen clause in the 2005 CBA.  (Def. Mem. in Supp. 24-28.)  The Court does

not agree.

Collective bargaining agreements can be made pursuant to either § 9(a) or § 8(f) of

the NLRA, 29 U.S.C. §§ 158-59.  Section 9(a) proscribes that, "when a majority of

employees in a unit appropriate for collective bargaining designates a labor union to

represent it, the union becomes the exclusive representative for collective bargaining

purposes."  NLRB v. Triple C. Maint., Inc., 219 F.3d 1147, 1152 (10th Cir. 2000).

"Under § 9(a) an employer may not unilaterally repudiate a contract and has a duty to

bargain in good faith after the contract expires."  Id.  This duty to bargain in good faith

after expiration often requires companies to continue making fringe-benefit contributions.

---

[3] Genz-Ryan argues that the interpretation and enforcement of an evergreen clause is within the
exclusive jurisdiction of the NLRB, but cites no authority for this proposition.  Certainly, the
Court must interpret a collective bargaining agreement if it is to determine whether fringe-
benefit contributions are due and owing pursuant to that agreement.  See Litton Fin. Printing
Div., a Div. of Litton Bus. Sys., Inc. v. NLRB, 501 U.S. 190, 202 (1991) (noting that the NLRB
"is neither the sole nor the primary source of authority" in interpreting collective-bargaining

Laborers Health, 484 U.S. at 541.

In contrast, § 8(f) allows employers engaged "in the building and construction industry to enter into pre-hire agreements containing union security clauses whether or not the union represents a majority of the employer's employees." Triple C., 219 F.3d at 1152. Agreements made pursuant to § 8(f) differ from those made pursuant to § 9(a) because they "are enforceable during the life of the agreement, but impose no continuing obligation to bargain following the termination of that agreement." NLRB v. W.L. Miller Co., 871 F.2d 745, 746 (8th Cir. 1989). However, "[n]either employers nor unions who are party to 8(f) agreements will be free unilaterally to repudiate such agreements." John Deklewa & Sons, Inc. v. Int'l Ass'n of Bridge Workers, Local 3, 282 N.L.R.B. 1375, 1385 (1987) (abrogated on other grounds).

The parties agree that Genz-Ryan is a party to the 2005 CBA pursuant to § 8(f) of the NLRA. (Pls. Reply Mem. at 10; Def. Mem. in Supp. at 3.) Genz-Ryan argues that because it is a § 8(f) contractor, the evergreen clause cannot be enforced against it because a § 8(f) contractor has "no obligation to continue the terms of the bargaining agreement or otherwise continue the bargaining relationship after the expiration of the 8(f) contract." (Def. Mem. in Supp. at 26.) The Court does not agree.

As a party to the 2005 CBA, Genz-Ryan is bound by all its terms. The 2005 CBA has an evergreen clause which extends the life of the agreement beyond its termination

_____

agreements).

date under certain circumstances.  Genz-Ryan cites no authority stating that an evergreen clause is unenforceable against § 8(f) contractors.[4]  In fact, § 8(f) contractors cannot repudiate contractual obligations simply because they extend beyond an express expiration date.  See Sheet Metal Workers Local Union No. 20 v. Baylor Heating & Air Conditioning, Inc., 688 F. Supp. 462, 466 (S.D. Ind. 1988) (holding that a § 8(f) contractor could not repudiate a collective bargaining agreement at its expiration date when an arbitration clause contained therein allowed the National Joint Adjustment Board to impose a new contract on the parties).  The fact that a § 8(f) contractor has no *statutory* duty to remain faithful to a collective bargaining agreement after its expiration does "not change the *contractual obligations* of the parties under the" agreement.  Id. at 473 (emphasis in original).  Therefore, the distinction between § 9(a) and § 8(f) contractors does not nullify the contractual duties of a § 8(f) contractor that extend beyond the termination date of a collective bargaining agreement.  See Jim McNeff, Inc. v. Todd, 461 U.S. 260, 271 (1983) (holding that "[n]othing in the legislative history of § 8(f) indicates Congress intended employers to obtain free the benefits of stable labor costs, labor peace, and the use of the union hiring hall.  Having had the music, he must pay the piper.").

### III.    Genz-Ryan is liable for contributions accruing after April 30, 2008

Genz-Ryan argues that even if the evergreen clause is enforceable, it fulfilled the

---

[4] Genz-Ryan cites International Ass'n of Bridge Workers, Local 3 v. NLRB, 843 F.2d 770, 775 (3d Cir. 1988), for the proposition that "an evergreen clause is void as to 8(f) contractors."  (Def. Mem. in Supp. at 26.)  This opinion makes no such holding.  Rather, it provides that when a company enters into a § 8(f) contract, it is "required . . . to comply with that agreement."  Id. at

clause's requirements by "terminating conferences" prior to April 30, 2008.  (Def. Mem. in Supp. at 28-33.)  In contrast, the Trustees argue that Genz-Ryan did not terminate conferences prior to April 30, 2008, as a matter of law.  (Pls. Mem. in Supp. at 12-16.)

"Federal substantive law governs the meaning of collective bargaining agreements."  <u>Sheet Metal Workers Local 19 v. Keystone Heating & Air Conditioning</u>, 934 F.2d 35, 40 (3d Cir. 1991) (citing <u>Textile Workers Union v. Lincoln Mills</u>, 353 U.S. 448, 456 (1957)).  Although different from an ordinary contract, "the meaning of a collective bargaining agreement may be determined by applying general rules of contract law as long as federal labor law does not provide a conflicting rule."  <u>Id.</u> at 40-41 (citing <u>Textile Workers</u>, 353 U.S. at 457).

Generally speaking, evergreen clauses are enforceable.  <u>Trustees of the B.A.C. Local 32 Ins. Fund v. Fantin Enters., Inc.</u>, 163 F.3d 965, 968 (6th Cir. 1998).  Genz-Ryan voluntarily became a party to the 2005 CBA, including its evergreen clause, when SMARCA executed the agreement on its behalf.  By terminating its relationship with SMARCA, Genz-Ryan did not dissolve its obligations under the evergreen clause.  This is made clear by a provision in the 2005 CBA that provides that contractors represented by SMARCA are "fully bound . . . as though each had executed the same individually." (John W. Quarnstrom Aff. Ex. C.)  It is illogical to state that Genz-Ryan is bound by all terms of the 2005 CBA <u>except</u> for the evergreen clause.

The evergreen clause provides:

779.

> This Agreement shall become effective on the 1st day of May, 2005, and shall remain in full force and effect until the 30th day of April, 2008, and shall continue in force from year to year thereafter, unless written notice of reopening is given not less than ninety (90) days prior to the expiration date. <u>In the event such notice of reopening is served, this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party</u>.

(<u>Id.</u> (emphasis added).)  The Court interprets this clause according to general principles of contract law, which require the Court to give contract language its plain and ordinary meaning.  <u>Int'l Union of Operating Eng'rs Local 571 v. Hawkins Constr. Co.</u>, 929 F.2d 1346, 1349 (8th Cir. 1991).  The clear and unambiguous terms of this clause required Genz-Ryan to be faithful to the 2005 CBA while negotiating a new contract with the Union regarding the rates of pay and working conditions of its Union employees.  The record is clear that such negotiations occurred and extended beyond April 30, 2008.  Accordingly, Genz-Ryan was required to make fringe-benefit contributions accruing during this time.

Genz-Ryan does not deny that it negotiated with the Union well beyond April 30, 2008, for a new collective bargaining agreement.  Moreover, Genz-Ryan does not deny that the negotiated agreement would have replaced the 2005 CBA, affected the same Genz-Ryan employees, and covered the identical employment issues.  Nevertheless, Genz-Ryan argues that it "terminated conferences" relating to the 2005 CBA because the parties were negotiating a "separate" and "new" agreement with different terms.  The Court does not agree.

Genz-Ryan cannot unilaterally circumvent its responsibilities under the evergreen

clause by proposing different contract terms.[5]  Such an interpretation would lead to the

absurd result where the applicability of the evergreen clause would depend on the degree

of similarity between the 2005 CBA and newly proposed contract terms.  Moreover,

Genz-Ryan's own statements cut against the assertion that it was negotiating a "new"

agreement with no connection to the 2005 CBA.  Bowen's January 25, 2008, letter

provides that "this letter constitutes notice of the Company's desire to open negotiations

directly with [the Union] to modify, amend, and/or change the wages, hours, and

conditions of employment contained in the existing [CBA]."  Thus, the connection

between the 2005 CBA and the negotiations that took place between Genz-Ryan and the

Union cannot be denied.

Sheet Metal Workers International Ass'n, Local Union No. 150 v. Air Systems

Engineering, Inc., 948 F.2d 1089 (9th Cir. 1991), does not support Genz-Ryan's argument

that it was negotiating a "new" contract with the Union and therefore had terminated

conferences relating to the 2005 CBA.  In Air Systems, a union and a contractor were

parties to a collective bargaining agreement with an evergreen clause similar to the clause

present here.  Id. at 1090.  The union did not give timely notice to the contractor of its

intent to reopen conferences relating to the soon-to-expire agreement.  Id. at 1090-91.

Because the reopening notice was untimely, the Ninth Circuit held that negotiations

_____

[5] Genz-Ryan places emphasis on the word "thereto" in the evergreen clause, arguing that this
word indicates that only negotiations utilizing the 2005 CBA as a template would extend its
enforceability.  There is no basis in the 2005 CBA for this interpretation.  The requirement that
the "conferences" relate to the 2005 CBA does not require negotiation proposals to mirror the

between the parties taking place after the expiration of the collective bargaining agreement were for "a new contract" and not for "a renewal of the previous contract."  Id. at 1092.  In this case, however, the Union's reopening notice was not untimely. Therefore, the parties were not negotiating a "new agreement."

Nor does International Brotherhood of Electrical Workers, Local 523 v. Brink Construction Co., 825 F.2d 207 (9th Cir. 1987), support Genz-Ryan's interpretation of the evergreen clause.  In Brink, a union and an individual contractor were bound by a collective bargaining agreement.  Id. at 209-10.  The Ninth Circuit held that the individual contractor's termination of its bargaining association nullified its responsibilities under an evergreen clause.  Id. at 215.  Specifically, the evergreen clause in Brink extended the life of the collective bargaining agreement until termination by "either party."  Id.  The Ninth Circuit held that individual contractors, represented by the bargaining association in entering into the collective bargaining agreement, were not "parties" to the evergreen clause, finding that "parties" referred only to the union and the bargaining association. Id.

The Court does not find the reasoning in Brink to be persuasive given the facts presented here.  Under the 2005 CBA, Genz-Ryan is considered to be "fully bound . . . as though [it] had executed the same individually."  Given this unambiguous language, there is no doubt that Genz-Ryan was intended to be a "party" to the entire 2005 CBA,

---

terms of the 2005 CBA.

including the evergreen clause.[6]  Moreover, Genz-Ryan admits that "conferences relating
thereto" would have occurred between it and the Union if they had used the 2005 CBA as
the template during their negotiations.  (Def. Mem. in Opp. at 23 n.7.)  Therefore, Genz-
Ryan acknowledges that it was subject to the strictures of the evergreen clause absent
representation by SMARCA.

In sum, negotiations between Genz-Ryan and the Union relating to the 2005 CBA
went beyond April 30, 2008.  Therefore, fringe-benefit contributions were required to be
made after that date.  Accordingly, the Court will grant the Trustees' Motion for Partial
Summary Judgment.

IV.    **There is a genuine issue of material fact as to when conferences terminated
       after April 30, 2008**

The parties disagree as to whether summary judgment is appropriate on the issue
of when conferences terminated after April 30, 2008.  (Pls. Mem. in Supp. at 8; Def.
Mem. in Opp'n at 6-7.)  Based on the record before the Court, there remains a genuine
issue of material fact regarding this issue.

As stated above, the plain and unambiguous words of the evergreen clause
required Genz-Ryan to be faithful to the 2005 CBA until negotiations on a new contract
terminated.  Indeed, the Ninth Circuit has interpreted nearly identical evergreen language

---

[6] The 2005 CBA does not define the term "parties."  Genz-Ryan asserts that "parties" refers only
to SMARCA and the Union because they are the only entities that signed the 2005 CBA.
Nevertheless, the contract requires the Court to treat Genz-Ryan as if it had executed the
agreement individually.  The fact that SMARCA signed the 2005 CBA on Genz-Ryan's behalf
does not alter this unambiguous contract term.

to mean that "once either party calls a halt to negotiations, the agreement ends."  <u>Beach Air Conditioning & Heating, Inc. v. Sheet Metal Workers Int'l Ass'n, Local Union No. 102</u>, 55 F.3d 474, 478 (9th Cir. 1995); <u>see also</u> <u>Sheet Metal Workers Int'l Ass'n, Local No. 18 v. Household Utils., Inc.</u>, 638 F. Supp. 177, 181 (E.D. Wis. 1986) (finding similar evergreen language to extend the enforceability of a collective bargaining agreement until negotiations between the parties had ended).  Here, the parties had bargaining sessions until October 27, 2008.  Based on the information before the Court, this session was not intended by the parties to be the last.[7]  In fact, neither party declared that further negotiations would not take place.

Over eight months have now passed without the parties returning to the negotiation table.  This passage of time seems to indicate that conferences are now terminated.  However, the question of when termination occurred cannot be resolved on summary judgment.  While Genz-Ryan declared impasse in June 2008, it soon thereafter requested the continuation of negotiations.  "A factfinder could certainly conclude that [Genz-Ryan's claim of impasse was] a form of 'posturing' intended to improve its negotiating position rather than an unequivocal termination of conferences."  <u>United Transp. Union v. Del. & Hudson Ry., Co.</u>, 977 F. Supp. 570, 576 (N.D.N.Y. 1997).  Therefore, a genuine issue of material fact remains as to when conferences terminated after April 30, 2008.

---

[7] According to notes taken by a Union representative, the parties agreed during the October 2008 bargaining session that the latest contract proposal would be sent to the Union and that further modifications would be made on that document.  (Strub Dep. Tr. Ex. 12.)  Thus, it appears that

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**ORDERED** that the Trustees' Motion for Partial Summary Judgment (Doc. No. 24) is

**GRANTED**, and Genz-Ryan's Motion for Summary Judgment (Doc. No. 19) is

**DENIED**.[8]

Dated: July 17, 2009

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge

---

further negotiations were contemplated at this time.

[8] This matter is on the Court's civil trial calendar for September 1, 2009; the only issue remaining for trial is the amount of delinquent fringe-benefit contributions due and owing, which will be calculated based upon the date when conferences were terminated.